UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DANILO JAVIER A.G.,

        Petitioner,

    v.

WARDEN, CALIFORNIA CITY
CORRECTION CENTER; et al.,

        Respondents.

No. 1:26-cv-04326-TLN-AC

A # 246-421-457

**ORDER**

This matter is before the Court on Petitioner Danilo Javier A.G.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus and Motion for Immediate Release, which the Court construes as a Motion for Temporary Restraining Order ("TRO"). (ECF Nos. 1, 2.) Respondents filed a consolidated opposition to both the Habeas Petition and Motion for TRO. (ECF No. 6.) For the reasons set forth below, Petitioner's Habeas Petition is GRANTED. (ECF No. 1.) Petitioner's Motion for TRO is DENIED as moot. (ECF No. 2.)

///

///

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is an asylum-seeker who entered the United States on or around December 15, 2022, with his wife and their three children.  (ECF No. 1 at 1; ECF No. 6-1 at 2.)  Petitioner was encountered and arrested by U.S. Border Patrol and then released on parole into the United States.  (ECF No. 6-1 at 2.)  Petitioner is currently in removal proceedings and has a pending asylum application.  (ECF No. 1 at 1; ECF No. 6-2 at 2.)

Following his entry into the United States, Petitioner developed ties to his community and worked for a construction company providing drywall services.  (ECF No. 1 at 2, 10.)  Petitioner has no criminal history.  (*Id.* at 2.)  Petitioner maintains that he has complied with all immigration requirements, is not a danger to the community, and is not a flight risk.  (*Id.*)  Petitioner submits several reference letters from members of his church community and a coworker attesting to his character.  (*Id.* at 5–8, 10.)

On January 24, 2026, Petitioner was arrested by the Miami Police Department for misdemeanor traffic violations.  (ECF No. 6-4 at 5.)  U.S. Immigration and Customs Enforcement ("ICE") issued an immigration detainer the following day and Petitioner was thereafter released to ICE custody.  (ECF No. 6-2 at 2.)  Petitioner requested a bond hearing and was denied upon the immigration judge finding a lack of jurisdiction.  (ECF No. 6-3 at 1.)  Petitioner was eventually transferred to the California City Correctional Center where he remains detained.  (ECF No. 1 at 1.)

On June 5, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus challenging the lawfulness of his civil detention.  (*Id.* at 2.)  Petitioner seeks immediate release.  (*Id.* at 3.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas

corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.[2]  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 2.)  In opposition, Respondents contend Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").[3]  (ECF No. 6 at 3–4.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693 (2001).  These due process rights extend to immigration proceedings, including detention and deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the

---

[2]    Respondents argue Petitioner's habeas petition is jurisdictionally barred by 8 U.S.C. § 1252(g) and § 1252(b)(9).  (ECF No. 6 at 3, 5.)  The Court rejects this argument.  Section 1252 of the Immigration and Nationality Act concerns judicial review of orders of removal, and there is no indication from the record that Petitioner is subject to a removal order.  *See generally* 8 U.S.C. § 1252.  Further, this habeas case challenges the constitutionality of Petitioner's civil detention, not the merits of his underlying removal proceedings.  (*See* ECF No. 1 at 2.)

[3]    Respondents also argue Petitioner's habeas petition should be denied for failure to exhaust administrative remedies.  (ECF No. 6 at 6–7.)  The Court has considered the factors set forth in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007), and finds prudential exhaustion is not required in this case.  Requiring Petitioner to appeal the decision denying him a bond hearing for lack of jurisdiction would also be futile.  *S.E.C. v. G. C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981).

Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### A.    Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear interest in his continued freedom protected by the Due Process Clause. The government's decision to release Petitioner on parole was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. Petitioner maintains that he has complied with all immigration requirements. Respondents do not contest this. Further, Petitioner has lived in the United States for nearly four years, during which time he pursued his asylum claim, worked, and developed ties to his community. The time Petitioner spent released in this country and the meaningful community connections he appears to have made in that time create a powerful interest for Petitioner in his continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–94 (E.D. Cal. 2025) (finding similarly).

The Court is not persuaded by Respondents' argument that Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2). Courts throughout the Ninth Circuit, including this one, have repeatedly rejected Respondents' position. *See e.g.*, *Hortua v. Chestnut*, No. 1:25-CV-01670-TLN-JDP, 2025 WL 3525916, at *3 (E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of

the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  In comparison, "[t]he government's proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases).  Respondents put forth no new arguments or facts justifying a different conclusion in this case.  Accordingly, the Court finds Petitioner is not subject to mandatory detention under § 1225(b)(2).  Petitioner maintains an interest in his continued liberty protected by the Due Process Clause.

### B.    Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the government's actions detaining him.  The amount of time Petitioner spent at liberty underscores the gravity of its loss.  *See Doe*, 787 F. Supp. 3d at 1094.  Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  While "[t]he government has legitimate interests in

protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. Respondents do not argue Petitioner is a danger to the public or a flight risk. As Petitioner has no criminal history, has complied with all prior immigration requirements, and has demonstrated ties to his community, the risk that he is being detained without proper justification is thus exceedingly high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low. The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094. Notice and custody determination hearings are routine processes for Respondents. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Respondents articulate no legitimate interest in detaining Petitioner absent these processes.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to notice and a hearing before a neutral decisionmaker prior to his detention. He received neither. Petitioner's detention thus violates the Fifth Amendment Due Process Clause.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1.    Respondents must IMMEDIATELY RELEASE Petitioner Danilo Javier A.G. (A # 246-421-457) from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions. **Respondents must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2.    Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing

evidence that the government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

      3.    Petitioner's Motion for TRO is DENIED as moot.  (ECF No. 2.)

      4.    **The Clerk of Court is directed to serve California City Immigration Processing Center with a copy of this Order.**

      5.    The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

    IT IS SO ORDERED.

DATED:  June 16, 2026.

Troy L. Nunley
United States District Judge